## In re STATE INS. Co., Bankrupt.

(*District Court, N. D. Illinois.*  June 11, 1883.)

1. BANKRUPTCY—FIRE INSURANCE—LOSS—FRAUDULENT PURCHASE OF CLAIMS.

   Where a party whose estate will pay 50 cents on the dollar, intending to go into bankruptcy, gets a friend to buy up all or a part of his indebtedness at 10 cents on the dollar, upon false statements of fact as to the amount of dividend his estate will pay, no court in bankruptcy would hold that an indebtedness thus obliterated by fraud could not be proven against the bankrupt's estate.

2. SAME—ADJUSTMENT OF CLAIM—WAIVER.

   In this case, the adjustment of the claim against the insurance company, made with the party who had fraudulently procured its assignment, must be held a waiver of the clause in the policy requiring suit for a loss to be brought within one year after the loss occurred, and such waiver will inure to the real owner of the claim.

In Bankruptcy.

*E. A. Otis* and *A. S. Bradley*, for William Bross.

BLODGETT, J.  At the time of the great fire of October 8 and 9, 1871, William Bross held a policy issued by the bankrupt company for $5,000, on which the loss by said fire was total. In the forepart of November, 1871, representations were made to Mr. Bross to the effect that the assets of the company would not enable it to pay over 10 cents on the dollar of its liabilities, and acting upon the belief that these representations were true, he transferred the policy and his claim under it to J. B. Smith for $500.  The policy was presented to the proper officers of the company by Smith, the liability of the company upon it admitted, and a certificate of indebtedness for the amount of the policy issued to Smith.  This certificate of indebtedness was assigned by Smith to the National Loan & Trust Company.  The State Insurance Company and National Loan & Trust Company were both in the control of the same men as officers of the two corporations, and I have no doubt from the proof that this purchase was made in pursuance of a conspiracy between certain of the officers and managing members of the two corporations for the purpose of enabling such persons to absorb the entire funds

of the insurance company; that at the time this purchase was made the assets of the insurance company were sufficient to make this policy worth at least 20 per cent. of its face value in any contingency; that J. B. Smith, whatever may have been the form of the transaction, did not make the purchase of this policy for his own use, nor on his own account, but acted wholly in behalf of the parties to the scheme for absorbing the funds of the insurance company.

The fifth of September, 1872, and after the facts in regard to the purposes of the parties connected with the bank and insurance company had been disclosed by proofs taken under the directions of this court, Mr. Bross filed with the register, and as part of the proceedings in this case, a notice that he claimed the right to rescind the assignment of said policy on the ground that it had been procured from him by fraud, and afterwards he filed a bill in equity to set aside that assignment. Pending said bill a decision was made in this case in substance to the effect that the National Loan & Trust Company had purchased this, with other policies, with the funds of the insurance company, and that such policies, and the certificates issued in adjustment of the losses on such policies, were void in the hands of the National Loan & Trust Company.

After this decision Mr. Bross seems to have taken no further steps with his chancery suit, but in July, 1875, he proved his claim in bankruptcy against the bankupt's estate on this policy, and the claim was duly allowed by the register. In January, 1877, the assignee filed his petition for a re-examination and expunging of this claim, of which due notice was given the claimant. By reason of some papers being mislaid, a final hearing upon the merits has been delayed until recently. The reasons urged by the assignee for expunging the claim are: (1) That Mr. Bross does not own the claim; (2) that the proof of loss was not made in apt time, as required by the terms of the policy,— that is, the policy contained the usual clause that no suit could be maintained for a loss under it, unless commenced within one year after the loss occurred; that the loss occurred in October, 1871, and proof of this claim in bankruptcy was not made until July, 1875.

In regard to the first point, I do not understand that any one else has proven a claim against the bankrupt's estate on this policy. The attempt of the National Loan & Trust Company to prove its claim on this and other policies it had purchased, was held to be fraudulent and its claim rejected. Long before this decision was reached Mr. Bross had given notice to the register that this policy was fraudulently obtained from him, and that he insisted upon it as

a claim in his favor against the bankrupt's estate; and proceedings were instituted by suit in equity to have the assignment to Smith and the National Loan & Trust Company set aside. When the court held that the National Loan & Trust Company had no title and could obtain no title to this and the other policies it had purchased with the money of the insurance company, I cannot see what reason there was for Mr. Bross to further prosecute his equity suit. If the policy had been purchased with the money of the company for its full value, and without fraud by Smith and those acting with him, undoubtedly the legal effect of such purchase would be to cancel the policy as a claim against the bankrupt estate. But the effect of the decision of the court as to the purchase of these claims by the National Loan & Trust Company was to make the National Loan & Trust Company, and those acting with it in regard to those claims, the agents of the insurance company. And if they perpetrated a fraud on the holder of this policy, as the proof clearly shows they did, the insurance company, whether in bankruptcy or out of it, cannot take advantage of such fraud. And I do not think it was necessary for Mr. Bross, after the action of the court in regard to these claims held by the National Loan & Trust Company, to prosecute his bill in equity to a final hearing. The title of the National Loan & Trust Company to the policy was fraudulent as against the insurance company, and the insurance company cannot be heard to insist that the claim is canceled if its agent obtained it from the actual owner by fraud.

If a man intending to go into bankruptcy, whose estate will pay 50 cents on the dollar, gets a friend to buy up all or a part of his indebtedness at 10 cents on the dollar, upon false statements of fact as to the amount of dividend his estate will pay, I think no court in bankruptcy would hesitate a moment in holding that an indebtedness thus obtained by fraud could be proven against the bankrupt's estate.

As to the last point—that the claim was not proven in apt time— I do not doubt that the adjustment of the claim by the insurance company while it was held by Smith, and the issue of the certificate of indebtedness, is a waiver of the year clause in the policy, and that this waiver inures to Bross, the real and equitable owner of the claim, as fully as if the certificate had been issued to him. *In re Firemen's Ins. Co.* 3 Biss. 462.

The petition to re-examine and expunge the claim will be dismissed.